STATE

v.

## Gail Ann BEAUCAGE.

### No. 80–169–C.A.

Supreme Court of Rhode Island.

Jan. 15, 1981.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, Appellate Division, Kathryn Panciera, Sp. Asst. Atty. Gen., for plaintiff.

Aram K. Berberian, Warwick, for defendant.

OPINION

WEISBERGER, Justice.

This is an appeal from a judgment of conviction in the Superior Court for possession of marijuana. The defendant challenges the lawfulness of her arrest and the validity of the search of her handbag in which the marijuana was discovered. We affirm the conviction.

At 1:45 a. m. on May 12, 1979, a North Providence police officer responded to a complaint of a disturbance at the Canterbury Apartments in that town. When the officer arrived at the parking lot adjacent to the apartment building, he observed three people at that location. The defendant was yelling and screaming obscenities at another woman. Amid these obscenities she threatened to kill the other woman. The police officer attempted to quiet her by admonishing her, but without success. Finally, the officer informed her that she was under arrest for disorderly conduct and attempted to handcuff her and remove her from the scene. At this point defendant kicked the police officer in the groin. Thereafter, defendant was subdued, arrested, and taken to the North Providence police station. At the station she was ordered to empty her handbag so that the contents could be inventoried. Two cigarettes were discovered in the course of the inventory, and later analysis by a toxicologist confirmed the officers' belief that the cigarettes contained marijuana. Although defendant was originally sought to be placed under arrest for disorderly conduct, she was charged only with the offense of possession of marijuana.

On appeal defendant raises two issues. She first claims that her initial arrest was unlawful since at trial no proof of the terms of the North Providence ordinance prohibiting disorderly conduct was elicited. Consequently she argues that the fruits of the search of her purse were inadmissible as the result of illegal detention. The defendant misconceives the relevance of the North Providence ordinance in the context of the facts of this case.

■ Regardless of the terms of the North Providence disorderly conduct ordinance, defendant's assault and battery upon the police officer furnished adequate valid grounds for her arrest. Even assuming, without deciding, that this defendant had doubts about the validity of her arrest for disorderly conduct, she had no right forcibly to resist arrest. General Laws 1956 (1969 Reenactment) § 12–7–10;[1] *State v. Small*, R.I., 410 A.2d 1336 (1980); *State v. Ramsdell*, 109 R.I. 320, 285 A.2d 399 (1971). Thus, defendant's conduct in resisting arrest with force and violence rendered the initial charge of disorderly conduct immaterial. The defendant's arrest was amply supported by her violent conduct toward the police officer.

■ The second point raised by defendant relates to the propriety of the inventory search that took place at the police station. There seems no question that in the light of recent cases decided by the Supreme Court of the United States, a full custodial arrest for a misdemeanor gives rise to the right of the arresting officer to make a full search of the person at the scene of such arrest. *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). This right to search incident to a lawful arrest has long been held to obtain not only at the scene of the arrest but at the station house as well. In *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Court observed:

"It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. If need be, *Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), settled this question. There the defendant was arrested at his hotel, but the belongings taken with him to the place of detention were searched there. In sustaining the search, the Court noted that a valid search of the property could have been made at the place of arrest and perceived little difference

'when the accused decides to take the property with him, for the search of it to occur instead at the first place of detention when the accused arrives there, especially as the search of property carried by an accused to the place of detention has additional justifications, similar to those which justify a search of the person of one who is arrested.' *Id.* at 239, 80 S.Ct. at 697. The courts of appeals have followed this same rule, holding that both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence." *Id.* at 803, 94 S.Ct. at 1237, 39 L.Ed.2d at 775–76 (footnote omitted).

The Court went on in a footnote to recognize the following general principles:

"Historical evidence points to the established and routine custom of permitting a jailer to search the person who is being processed for confinement under his custody and control. While '[a] rule of practice must not be allowed * * * to prevail over a constitutional right,' *Gouled v. United States*, 255 U.S. 298, 313, 41 S.Ct. 261, 266, 65 L.Ed. 647 (1921), little doubt has ever been expressed about the validity or reasonableness of such searches incident to incarceration." *Id.* at 804–05 n. 6, 94 S.Ct. at 1238 n. 6, 39 L.Ed.2d at 776 n.6 [citations omitted].

Therefore, the search in the instant case was incident to a valid arrest, whether performed at the scene of such arrest or at the station. Further, inventory searches (and this was found to be the motivation of the North Providence police in this case) have been widely recognized of late. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Although the *Opperman* case dealt with the inventory search of an impounded motor vehicle, the

---

1. General Laws 1956 (1969 Reenactment) § 12–7 10, has since been amended by P.L.1980, ch. 351, § 1, in a manner which is not pertinent to this controversy.

principles enunciated therein would be clearly applicable to personal property of an arrestee. The general purposes to be served by an inventory search are (1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger. *See South Dakota v. Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005.

Indeed, in the case at bar, the third purpose, that of protecting the police against potential danger, was more than ordinarily applicable. In a situation in which a woman in an uncontrollable fit of rage has threatened the life of another person and has violently kicked a police officer, certainly an inspection of her handbag to determine whether it contained a dangerous instrumentality was not only reasonable but an essential police procedure.

For the reasons stated, the appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remanded to the Superior Court.