STATE

v.

**Harry T. BONIN.**

**No. 90–570–C.A.**

Supreme Court of Rhode Island.

May 30, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Michael R. Egan, Sp. Asst. Atty. Gen., for plaintiff.

William Filippo, Calvino Law Associates, Providence, Patricia Breslin, Warwick, for defendant.

OPINION

PER CURIAM.

On May 9, 1991, the defendant, Harry T. Bonin (Bonin), by his counsel, appeared before this court to show cause why his appeal from a judgment of conviction involving the possession of marijuana should not be summarily denied and dismissed. The state was also admonished to be prepared to show cause why Bonin's appeal should not be summarily sustained.

The record indicates that on November 19, 1988, Bonin was involved in a motor-vehicle accident when the vehicle he was driving veered off Route 102 in Exeter, Rhode Island, and came to rest along a wooded embankment. A rescue vehicle arrived, and Bonin was transported to Kent County Memorial Hospital for treatment of his injuries. Since the vehicle was damaged and there was no one present to take charge of it, Trooper Elwood Johnson (Johnson), the State Police officer who responded to the accident, called for a tow truck to remove Bonin's automobile from the embankment. Prior to the tow truck's arrival, Johnson conducted an inventory search of the vehicle. In the rear hatchback area of the vehicle, Johnson found an unlocked suitcase. Upon opening the suitcase, Johnson found ten large clear-plastic bags each containing one pound of a greenish-brown substance later determined to be marijuana. Johnson then proceeded to the hospital and charged Bonin with possession of marijuana with intent to deliver.

On May 3, 1989, a trial justice denied Bonin's motion to suppress the evidence found in the suitcase, and on May 4, 1989, a jury found Bonin guilty of the crime charged.

On appeal Bonin argues that the trial justice erred in denying his motion to suppress the marijuana evidence. Bonin contends that at the time of the search he was not under arrest, nor was there any reason to believe that he had committed or was committing a crime. In short, Bonin argues, the inventory search conducted by Johnson was illegal and, therefore, the evidence should properly have been excluded by the trial justice.

Inventory searches have long been recognized in this jurisdiction as a valid exception to the search-warrant requirement. *See, e.g., State v. Louro,* 589 A.2d 1197, 1198 (R.I., 1991). We have stated that an inventory search of an arrestee's personal effects located inside a motor vehicle was not repugnant to the protections afforded by the Fourth Amendment. *State v. Halstead,* 414 A.2d 1138, 1149 (R.I.1980). Additionally, we have expanded the scope of inventory searches to reach beyond motor vehicles and encompass the personal property of an arrestee. *See State v. Beaucage,* 424 A.2d 642 (R.I.1981). In *Beaucage* we emphasized, "The general purposes to be served by an inventory search are (1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger." *Id.* at 644 (citing *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000, 1005 (1976)).

Despite these past holdings by this court, Bonin relies on the recent Supreme Court decision of *Florida v. Wells,* — U.S. —, —, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 7 (1990), to support his contention that "the search conducted was unreasonable under the law due to the fact that there was no policy which 'sufficiently regulated' inventories so as to 'satisfy the Fourth Amendment.'" *Wells* also involved an inventory search of a motor vehicle in which a suitcase containing marijuana was found. We believe, however, that Bonin's reliance on *Wells* is misplaced. With regard to a police officer's discretion when conducting an inventory search, the Court stated:

" 'Nothing in [*South Dakota v.*] *Opperman* [, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) ] or [*Illinois v.*] *Lafayette* [, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) ] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of crimi-

nal activity.'" *Id.* at —, 110 S.Ct. at 1635, 109 L.Ed.2d at 6.

The Court went on to say:

"A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself. Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." *Id.* at —, 110 S.Ct. at 1635, 109 L.Ed.2d at 6–7.

The Court concluded that the evidence in question was properly suppressed at trial since the Florida Highway Patrol had no policy whatsoever with respect to the opening of closed containers during an inventory search. *Id.*

We are of the opinion that *Wells* is inapposite to the facts before us. Here, unlike *Wells,* Johnson testified that the Rhode Island State Police have a routine policy of conducting inventory searches on motor vehicles "[a]nytime a vehicle is impounded and the operator is not present to operate the vehicle," regardless of whether the operator is suspected of criminal activity. Indeed a form exists entitled "Seizure and Inventory Report of Impounded Motor Vehicles" that is specifically used by the Rhode Island State Police to record items found in inventory searches. When questioned whether it was standard police procedure to open containers found within vehicles, Johnson replied in the affirmative. Furthermore, Johnson testified that "we do an inventory of the contents of the vehicle to protect [the operator's] belongings, to protect our reputation [and] the reputation of the tow services," clearly making the purpose of the inventory search acceptable according to the parameters set forth in *Beaucage.* In sum, testimony elicited at

trial indicates that the Rhode Island State Police do have a standardized procedure for inventorying vehicles, and Johnson was acting pursuant to this policy when Bonin's vehicle was inventoried. Accordingly, we believe the inventory search in question did not impermissibly impinge upon Bonin's Fourth Amendment rights.

Consequently the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.